Archie Yancey v. The State.

No. 4705.  Decided November 21, 1917.

**1.—Assault to Murder—Evidence—Explanations.**

Where, upon a trial of assault to murder, the State proved that defendant's daughter, who was a witness for the defendant, immediately after the shooting got in the buggy of the defendant and rode away, for the purpose of impeaching her testimony, the defendant should have been permitted to prove in explanation of her conduct that she was trying to call a physician to the assistance of her father.

**2.—Same—Evidence—Cross-examination.**

Upon trial of assault to murder the State should not have been permitted on cross-examination of the defendant to ask why he carried a pistol when passing through the farm near the house and on the premises of the injured party, as it had no connection with the case.

**3.—Same—Evidence—Rebuttal—Explanation—Rule Stated.**

It is the universal rule that where a damaging fact is introduced in evidence the opposing party may meet it by testimony which tends to show that it is not intended as claimed by the party offering it.

Appeal from the District Court of Hill.  Tried below before the Hon. Horton B. Porter.

Appeal from a conviction of an assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*N. J. Smith* and *J. E. Clark,* for appellant.—On question of introducing testimony with reference to carrying a pistol:  Clark v. State, 76 Texas Crim. Rep., 645, 177 S. W. Rep., 84; Nowlin v. State, 76 Texas Crim. Rep., 480, 175 S. W. Rep., 1070; Bowman v. State, 70 Texas Crim. Rep., 22; Vannort v. State, 57 id., 615; Nunn v. State, 60 id., 86; Terrell v. State, 55 id., 282.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault to murder, his punishment being assessed at two years confinement in the penitentiary.

The evidence shows that the assaulted party, Caruthers, owned a farm and lived upon it, and was the father of ten daughters.  Appellant on Friday night preceding the trouble on Monday had attended an ice cream function in company with one of Caruthers' daughters.  On Sunday evening, after this Friday night, appellant and another party drove through the premises of Caruthers and was accosted by Caruthers and Caruthers talked to him in a rough and in an insulting manner.  The purport of it was he was incensed at appellant for going with his daughter to the function and interdicted his going with his daughters. He made threats against appellant.  The road appellant and his friend was traveling was used commonly by the neighborhood.  On the follow-

ing Monday appellant passed through the premises again in a buggy by himself. Caruthers was in the yard under the shade of a tree. After appellant passed about three or four hundred yards Caruthers followed him rapidly and called him to stop. Appellant stopped. Caruthers approached and the difficulty occurred in which appellant wounded Caruthers two or three times. The eyewitnesses to the transaction differ as to how the difficulty occurred. The State's theory was that when Caruthers approached and before getting quite to appellant's buggy the shooting occurred. Caruthers had said some very rough things to him as he approached indicative of carrying out the threat he had made on the previous Sunday. Appellant's theory of it, which is supported by himself and two of Caruthers' daughters, was that when he, appellant, stopped his buggy, Caruthers approached, came in between the wheels on the left hand side of the buggy, was pretty vigorous in his language, and made threats and reached as if to pull a pistol or knife, or something, and appellant fired. After firing a time or two Caruthers ran behind the buggy and fell, got up and ran off in a nearby field.

Grace Caruthers testified in behalf of the defendant as to the condition of the parties, and in fact that her father was at the wheels of the buggy or between the wheels of the buggy at the time the firing began. She immediately, after the shooting, as appellant drove down the road, holloed at him, got in the buggy and rode away. This fact was proved by the State in criticism of her testimony and as impeachment. The defendant then offered to prove in explanation of her conduct that she got in the buggy for the purpose of going to the little village of Kimball close by for a doctor to come to the assistance of her father. This testimony was excluded on exception by the State. This was error. Her getting in the buggy and going with appellant under the circumstances was calculated to influence the jury adversely to her testimony. Her explanation, if believed by the jury, might be satisfactory, that she was not in sympathy with appellant, but was seeking assistance for her father. This testimony should have gone to the jury.

Another bill of exceptions recites that on cross-examination the State asked appellant why he carried his pistol when passing through the farm and near the house and on the premises of Caruthers. Various objections were urged to all this, and he was permitted and required to answer: "I do not know that I ever went through there without it, hardly ever. I carried it all the time." This was error.

Another bill recites that while Tom Ezell was testifying in behalf of defendant and after it had been shown that on the morning preceding the difficulty between defendant and Caruthers that he and appellant, by an appointment previously made, met at Green Briar School House for the purpose of taking an empty beer keg to the town of Blum to ship to Forth Worth, and after they had carried this keg to Blum and were returning home witness left defendant to go to his home about one mile and a half or two miles from where they separated, and that defendant

started towards his, defendant's home, and after it was shown that the defendant after leaving witness decided to go to Kimball, after he had gotten about a half mile from Green Briar School House, and after it was further shown that he had started to Kimball and had traveled the road leading by prosecuting witness' house, and into and through the field, which was a road used by the general public, and after the facts and circumstances of the difficulty had been shown, and after it had been further shown that witness had met defendant and Miss Grace Caruthers in a buggy about a half mile from the scene of the difficulty and at a place in the road off of defendant's road to his home, the defendant offered to prove by the witness, Tom Ezell, as a reason why he did not go straight home and as a reason why he met the defendant and prosecuting witness, that he had an engagement with Miss Grace Caruthers to see her that evening at Mr. Parkers, which was a short distance off the main road, for the purpose of making an engagement to attend a moving picture show at Blum. Under the circumstances this testimony ought to have gone to the jury. The theory of the State in introducing this testimony was that Ezell and appellant had a conspiracy that they were to separate as they did and meet again after appellant engaged Caruthers in a difficulty. This would have been an explanation if believed by the jury as to why Ezell was going in the direction he was going at the time and for the purpose for which it was offered. It is a universal rule not only under the well known principles of evidence, but by the statute, that where a damaging fact, or a fact thought to be damaging, is introduced, the opposing party may meet that by testimony which tends to show that it was not intended as claimed by the party offering it. In other words, wherever a fact thought to be damaging is introduced against a party, he may meet that by any available legitimate testimony to counteract or explain such fact.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, Judge, dissenting.

[This case reached Reporter December, 1917.]